**Helen Frances Sutton ROOT, Appellee,**

v.

**Isabel H. GAUPER, Appellant.**

**No. 20603.**

United States Court of Appeals,
Eighth Circuit.

Feb. 25, 1971.

Dale A. Rollings, Asst. Atty. Gen., John C. Danforth, Atty. Gen., Jefferson City, Mo., for appellant.

Edward A. Glenn, Louisiana, Mo., for appellee.

Before VAN OOSTERHOUT, GIBSON and LAY, Circuit Judges.

GIBSON, Circuit Judge.

This is an appeal by the State of Missouri from the grant of a writ of habeas corpus to the appellee by the District Court, the Honorable William E. Collinson. The appellee was convicted in the state court of involuntary manslaughter of her husband, Lonnie Sutton, by reason of culpable negligence and sentenced to two years in prison. Her conviction was affirmed on appeal by a divided Missouri Supreme Court, with Judges Finch and Seiler dissenting, State v. Sutton, 454 S.W.2d 481 (Mo.1970). Judge Collinson adopted Judge Finch's dissenting opinion as his own. The question presented in that appeal is identical to the one in this habeas corpus proceeding, namely whether certain evidence admitted at the trial was the product of an unlawful search and seizure. The facts and circumstances surrounding the commission of the crime may be found in detail in the Missouri Supreme Court's opinion; only those pertinent to the search and seizure question are summarized here.

In the evening of July 22, 1967, the victim Lonnie Sutton called the telephone operator saying that his wife had shot him and to call an ambulance, he was dying. The operator connected him with an ambulance driver, Collier, who in turn then called the town marshal, Lindsay, reported the call and sought directions to the Sutton home. Collier and two assistants then proceeded to the Sutton home. Lindsay meanwhile called the county sheriff, Marshall, and reported his conversation with Collier. Lindsay and Marshall proceeded separately to the Sutton home. Collier arrived first at the Sutton home, he and his two assistants entered the home, found Sutton unconscious from a shotgun wound in the abdomen, removed him to the ambulance and proceeded to the hospital. On the way to the hospital, Collier passed Lindsay and Marshall on their way to the Sutton home and informed them by radio communication that he had removed Sutton from the house and was taking him to the hospital. Sutton was dead on arrival at the hospital.

Lindsay, the town marshal, was the next to arrive at the Sutton house. He did not enter immediately, but remained outside for several minutes until Sheriff Marshall arrived. The two men then entered the house by the unlocked front screen door, proceeded across the porch and through the living room to the kitchen, where they found a shotgun, some shells and took some pictures. These items were admitted into evidence at appellee's trial, over appellee's objection that they were the product of an unlawful search and seizure. The officers did not have a warrant at the time they entered the house, there was no one there at the time, and appellee was not arrested for the crime until sometime later.

The State suggests three alternative theories on which the search and seizure of the evidence without a warrant can be justified: (1) that the items seized were within the "plain view" of the officers and thus are not subject to the warrant requirement; or (2) that Sutton consented to the officer's entry into the home; or (3) that the officer's entry without a warrant was justified by the emergency doctrine.

We start with the proposition that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, (1967). The "plain view" doctrine is one of these exceptions, but it comes into operation only if the officers have a right to be in the position where they obtain the view of the object. "It has long been settled that objects falling in the plain view of an officer *who has a right to be in the position to have that view* are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968) (em-

phasis added). The evidence which was seized in this case was not in the plain view of the officers from outside the house. Thus the plain view doctrine cannot in and of itself justify the seizure and admission of this evidence. United States v. Davis, 423 F.2d 974, 977–978 (5th Cir. 1970).

We next consider the question of whether the entry into the house without a warrant was itself justified by some other exception to the warrant requirement.

■ The State argues that that justification can be found by the consent given by Sutton to enter the house. Both the Missouri Supreme Court and the District Court rejected this contention, and we think properly so. In the first place, any consent which Sutton may conceivably have given to enter his home was given, not to the police officers, but to the commercial ambulance operator. Sutton did not call the police, never talked to them, and so far as the record shows never even had any knowledge that they were on the way to his house or intended to enter it. In the second place, any consent which waives Fourth Amendment rights must be freely and intelligently given. Drummond v. United States, 350 F.2d 983, 988 (8th Cir. 1965), cert. denied, Castaldi v. United States, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1965). The facts here warrant no such conclusion. This is not to say that the police cannot lawfully enter a home without a warrant in response to a cry for help or for some other emergency purpose. And additionally, as pointed out by Judge Seiler in his dissent in State v. Sutton, 454 S.W.2d at 494–495, "There never has been any doubt that a policeman or fireman is privileged to enter private premises in the discharge of his public duty." But where entry is justified, it must be on a basis other than a fictionally contrived consent. This brings us to a discussion of the emergency doctrine.

The emergency doctrine had its origin in a dictum enunciated by Justice Jackson in Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1947): "There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with." The Supreme Court later suggested such a situation might occur "where the officers, passing by on the street, hear a shot and a cry for help and demand entrance in the name of the law." McDonald v. United States, 335 U.S. 451, 454, 69 S.Ct. 191, 192, 93 L.Ed. 153 (1948). The doctrine has been applied in many varying circumstances. Illustrative cases are United States v. Barone, 330 F.2d 543 (2d Cir.), cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964) and Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205, cert. denied, 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963). We need not discuss in detail these cases or others relied on by the State, as they are reviewed in full in both the majority and dissenting opinions of the Missouri Supreme Court in State v. Sutton, *supra.*

■ For purposes of the instant case, the emergency or exigency doctrine may be stated as follows: police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance. In applying this doctrine, two principles must be kept in mind. (1) Since the doctrine is an exception to the ordinary Fourth Amendment requirement of a warrant for entry into a home, the burden of proof is on the state to show that the warrantless entry fell within the exception. McDonald v. United States, 335 U.S. at 456, 69 S.Ct. 191; United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951). (2) An objective standard as to the reasonableness of the officer's belief must be applied.

"* * * [I]n justifying the particular intrusion the police officer must

be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry v. Ohio, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

Applying these principles to the instant case, we cannot say that the officer's entry without a warrant was justified under the circumstances. With the benefit of hindsight, we know of course that no emergency in fact existed at the time of the entry into the Sutton home. In judging the lawfulness of the entry, however, we must ponder the question of whether the officers in fact had a reasonable belief that an emergency did exist. We recognize the salutary and empirical doctrine of an emergency or exigency making reasonable a warrantless entry and possibly search of a home, and further recognize that the Supreme Court of Missouri has the prerogative of accepting that doctrine, but the record here fails to support the application of that doctrine.

■ There is no testimony anywhere in the record, either from the hearing on the motion to suppress the evidence or from the trial itself, that the officers in fact believed or had reasonable cause to believe that an emergency existed at the time of entry. Other evidence in the record would suggest that they did not have. We note that Marshal Lindsay did not enter the house immediately when he arrived, but waited outside for several minutes until Sheriff Marshall arrived. Such action is not consistent with that of a man who believes that wounded persons might be lying inside the house awaiting attention. Both officers knew prior to entering the house that Sutton had already been removed from the house by the ambulance operator and his two assistants. These men had not discovered any other wounded victims in the house. Sutton had not suggested in his phone conversations that there were any others wounded. There is no other bit of evidence in the record that would even slightly suggest that the officers had any reason for believing that there were any other persons in need of aid. Furthermore, the sheriff arrived at the scene equipped with a camera and, upon entering the house, took several photographs which were used as evidence. This suggests that the purpose of entering the house was to obtain evidence relating to the commission of the crime.

Upon this record, we must conclude that the State has failed to meet its burden of proof showing that the warrantless entry was justified under the emergency doctrine. Hence, the admission of the evidence obtained in violation of the Fourth Amendment was constitutional error.

■ The judgment of the District Court granting the writ of habeas corpus is affirmed, with the provision that the State may retry appellee within 90 days of this Court's mandate.[1]

1. Appellee is not presently incarcerated, and we do not know whether the State is interested in retrying her. However, the State has the right upon the reversal of a conviction based in part upon unconstitutional evidence to retry the defendant without the tainted evidence. Orozco v. Texas, 394 U.S. 324, 327, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). We see no reason to distinguish between a reversal of a conviction on direct appeal and a release obtained by means of the grant of a writ of habeas corpus.