EL PUEBLO DE PUERTO RICO, peticionario, *v.* GABRIEL RIVERA COLLAZO, acusado y recurrido.

*Número:* CE-87-459      *Resuelto:* 6 de octubre de 1988

*Norma Cotti Cruz, Subprocuradora General,* y *Antonio Figueroa Rodríguez, Procurador General Auxiliar,* abogados de El Pueblo; *Ángel Juarbe De Jesús,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

El 12 de diciembre de 1986, alrededor de las nueve de la noche, el acusado recurrido conducía un vehículo de motor marca Datsun por la carretera del Barrio Viví Abajo, sector Las Cuevas de Utuado, cuando impactó un garaje contiguo a la residencia del Sr. Vicente Ramos Rosario. El señor Ramos Rosario, quien se encontraba en su casa, salió a la carretera a observar lo ocurrido. Encontró al acusado recurrido dentro del vehículo en el asiento del conductor, en estado de inconsciencia y con el motor, las luces y el radio del vehículo encendidos. Lo llamó en varias ocasiones y el acusado no contestó. Continuó inconsciente y respiraba con dificultad. El señor Ramos Rosario se dirigió al Cuartel de la Policía a notificar la situación. Llegaron el policía Wilfredo Soto y el Sargento José L. Cabán. Éstos procedieron a llamar al acusado recurrido sin recibir respuesta alguna, por lo que de inmediato solicitaron una ambulancia, la que nunca llegó. Ante esta situación, optaron por llevar al acusado recurrido al hospital en el auto patrulla. Al abrir la puerta del vehículo, se encendió la luz interior. El policía Soto observó una jeringuilla con sangre aún fresca en el tablero de instrumentos, así como también una chapa de cerveza quemada en la alfombra. Al sacar al conductor de su auto para trasladarlo al hospital, se le cayó una cajetilla de cigarrillos del bolsillo de la camisa. El agente Soto abrió la cajetilla y encontró en su interior un

sobre que contenía un polvo blanco que luego resultó ser cocaína.

El sargento Cabán se llevó al acusado, todavía inconsciente, al hospital. Luego de éste recuperar el conocimiento, fue conducido al Cuartel de la Policía donde se le notificó que estaba bajo arresto.

Por esos hechos el Ministerio Público presentó acusaciones contra el señor Rivera Collazo ante el Tribunal Superior, Sala de Utuado, por violaciones a la Ley de Sustancias Controladas de Puerto Rico y por infracción a la Ley de Vehículos y Tránsito de Puerto Rico. El acusado recurrido presentó moción y solicitó la supresión de la evidencia, por razón de que ésta fue ocupada al realizarse un registro ilegal.

Celebrada la vista, y luego de examinar los memorandos de ambas partes, el tribunal emitió la orden siguiente:

> Se [d]eclara [c]on [l]ugar [l]a [m]oción [d]e [s]upresión [d]e [e]videncia. El [r]egistro fue [a]nterior al [a]rresto. Hubo [c]ausa [p]robable [p]ara [a]rrestar [p]ero [r]egistraron [p]rimero y [a]rrestaron [d]espués, [e]so [v]icia [e]l [r]egistro. Alegato del Procurador General, pág. 3.

De dicha orden acude ante nos el Procurador General y señala:

> Incurre en error de derecho el Honorable Tribunal de Instancia al declarar Con Lugar, la Moción de Supresión de Evidencia, presentada, determinando que "el registro fue anterior al arresto" y por tal estuvo viciado. Alegato del Procurador General, pág. 5.

Revisamos mediante orden para mostrar causa. El acusado recurrido compareció. Estamos en posición de resolver.

I

Al examinar el alcance del Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 402, en su prohibición contra registros, incautaciones y allanamientos irrazo-

nables, en *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207–208 (1984), señalamos que:

> . . . Sujeto a contadas excepciones de alcance rigurosamente definido, la garantía contenida en la Sec. 10 del Artículo II de la Constitución de Puerto Rico cubre tanto los registros administrativos como los penales. La regla general es, en consecuencia, que todo registro, allanamiento o incautación que se realice, no importa su índole penal o administrativa, es irrazonable per se de llevarse a cabo sin orden judicial previa. . . . [Esta] regla general prevalece, a menos que se consienta al registro, directa o indirectamente, o circunstancias de emergencia requieran lo contrario y el peso de los intereses en conflicto exija una solución distinta.

Para garantizar dicha protección es que se ha establecido, como regla general, el que un registro o incautación sin orden judicial produce una presunción de invalidez, por lo que compete al Ministerio Público rebatirlo mediante la presentación de prueba sobre las circunstancias especiales que requirieron esa intervención. *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979). Esa protección del Art. II, Sec. 10 de nuestra Constitución, *supra*, contra registros irrazonables ha sido expresamente extendida a los vehículos de motor. *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988); *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770 (1982); *Pueblo v. Sosa Díaz*, 90 D.P.R. 622 (1964).

Generalmente, el tribunal tiene que lidiar con situaciones en que la Policía penetra en predios privados con el propósito de arrestar a una persona que supone se encuentra en ellos, o con la intención de encontrar frutos, instrumentos o evidencia relacionada con actividad delictiva pasada o en proceso de cometerse. Aunque son los registros con esos propósitos los que con mayor frecuencia dan lugar a mociones de supresión, las que requieren una adjudicación en cuanto a la validez de la penetración y posterior conducta de

la Policía,(1) debe estar bastante claro que la Policía tiene ocasión de entrar a predios privados sin una orden judicial para un sinnúmero de propósitos. La Policía tiene múltiples y complejas tareas que realizar además de identificar y arrestar personas que cometen delitos. Debido a las funciones inherentes a su cargo, de ellos se espera que reduzcan las oportunidades de que se cometan delitos a través del patrullaje preventivo y otras medidas que brinden ayuda a personas en peligro de daño corporal, que ayuden a aquellos que no pueden hacerlo por ellos mismos, que resuelvan conflictos, que creen y mantengan una sensación de tranquilidad en la comunidad, y que provean otros servicios en casos de emergencia. La entrada y registro de predios para dichos propósitos puede, a veces, resultar en el descubrimiento de evidencia delictiva, en cuyo caso se requiere una determinación de la legalidad de dicha actividad policíaca. W.R. La-Fave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 2, Sec. 6.6, pág. 697; 1 *The ABA Standards for Criminal Justice* Cap. 1, Sec. 1-1.2 (2da ed. 1980).

■    Tanto los tribunales(2) como los estudiosos de la materia(3) reconocen la autoridad de la Policía para penetrar en una vivienda o una propiedad, sin una orden judicial, con el propósito de dar auxilio o asistencia a una persona que se encuentra, según su razonable entender, en peligro o necesitada de ayuda. Comó bien señaló el Juez Burger:

> ... warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to pre-

---

(1) En cuanto a una detención de un vehículo por una violación a las leyes de tránsito y la posterior conducta de la Policía, ver *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988).

(2) *Root v. Gauper*, 438 F.2d 361 (8vo Cir. 1971); *State v. Sanders*, 506 P.2d 892 (Wash. 1973).

(3) E.G. Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment*, 22 Buff. L. Rev. 419 (1973).

vent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justificacion for what would be otherwise illegal absent an exigency or emergency. Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. Acting in response to reports of "dead bodies," the police may find the "bodies" to be common drunks, diabetics in shock, or distressed cardiac patients. But the business of policemen and firemen is *to act*, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. Even the apparently dead often are saved by swift police response. A myriad of circumstances could fall within the terms "exigent circumstances" referred to in Miller v. United States, supra, e.g., smoke coming out a window or under a door, the sound of gunfire in a house, threats from the inside to shoot through the door at police, reasonable grounds to believe an injured or seriously ill person is being held within. *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963).

■ Sin duda, existen variedad de situaciones donde una entrada con el propósito de brindar ayuda es razonable. Se ha resuelto, por ejemplo, que son válidas las entradas hechas para rescatar personas de un edificio en llamas, *Steigler v. Anderson*, 496 F.2d 793 (3er Cir. 1974); *People v. Connolly*, 303 N.E.2d 409 (1973); para buscar a alguien a quien han reportado como perdido, *United States v. Presler*, 610 F.2d 1206 (4to Cir. 1979); *Ash v. State*, 424 So. 2d 1381 (1983); *Com. v. Silo*, 502 A.2d 173 (Pa. Super. 1985); para buscar a alguien herido de bala o cuchillo, *United States v. Goldenstein*, 456 F.2d 1006 (8vo Cir. 1972); *State v. Mincey*, 636 P.2d 637 (Ariz. 1981); *United States v. Good*, 780 F.2d 773 (9no Cir. 1986); para ayudar a un niño maltratado o descuidado, *People v. Sutton*, 134 Cal. Reptr. 921 (1977); *State v. Bittner*, 359 N.W.2d 121 (S.D. 1984); para responder a una llamada de que hay una pelea dentro, *State v. Hetzko*, 283 So. 2d 49 (1973); *Commonwealth v. McKeever*, 323 A.2d 44 (Pa. Super.

1974), y para cotejar una llamada histérica a la Policía, *State v. Hyde*, 268 N.E.2d 820 (1971). Un estudioso de los registros e incautaciones coincide con este enfoque. Señala que:

> ... The policeman, as a jack-of-all-emergencies, has "complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses"; by default or design he is also expected to "aid individuals who are in danger of physical harm," "assist those who cannot care for themselves," and "provide other services on an emergency basis." *If a reasonable and good faith search is made of a person for such a purpose, then the better view is that evidence of crime discovered thereby is admissible in court.*
>
> Illustrative is *People* v. *Smith*, where in response to a radio call that a man was "down" in the hallway of a small hotel two policemen found defendant lying on a landing between the first and second floors. The officers attempted to awaken the defendant, but he was so disoriented and incoherent that he was unable to answer any questions, so the police then sought some identification on his person. In doing so, they found several packets of marijuana in his back pocket. The defendant argued that there was no reason for the police to search for a weapon and that there was no basis for a search for evidence of the only crime then possibly apparent, disorderly conduct, so that the marijuana must be suppressed, but the court disagreed:
>
>> We cannot agree with this line of reasoning, for as indicated by the great number of search and seizure cases before the courts today there is no iron-bound rule that governs all such cases regardless of circumstances. The constitucional prohibition is against unreasonable searches and seizures and what is reasonable or unreasonable is dependent upon the facts of each individual case. We have no quarrel with any of the cases cited by the defendant but no one of them meets the facts of this case. Here the officers were summoned to investigate the circumstances involving a distressed person. They found him in a stupor, not intoxicated apparently, for there was no odor of alcohol. But he was totally disoriented and incoherent, unable to answer their ques-

tions as to his condition or identity. For all they knew he may have been a diabetic in shock or a distressed cardiac patient. The officers were faced with an entirely different set of facts requiring different guide lines. This was an emergency situation where the welfare of the individual was at stake.

*Other courts have likewise recognized that if the police find a person unconscious or so seriously injured that questioning of him is impractical or unproductive, then it is reasonable for the police to search that person in an effort to determine his identity, the identity of friends or relatives who should be notified, and any evidence of medical history of the injured party which might be useful in treating him.* Similarly, if the police come upon a person who is disoriented and threatening suicide, it is reasonable for them to search the person to ensure that he does not have a weapon or substance by which he could cause death or injury to himself. (Énfasis suplido y escolios omitidos.) LaFave, *op. cit.*, Sec. 5.4(c), págs. 525–526.

Claro está, una mera alegación de emergencia, infundada y sin explicar, no es suficiente para hacer admisible una evidencia obtenida mientras la Policía entraba para atender una supuesta emergencia. Debe haber algo más. Primeramente, por ser ésta una excepción al requisito constitucional de una orden judicial para un registro, el peso de la prueba para demostrar que el registro sin orden cae dentro de la excepción la tiene el Estado. En segundo lugar, debe haber una evaluación rigurosa de la razonabilidad de la creencia de la Policía de que existía una emergencia. La Policía debe tener la creencia razonable de que existe una emergencia que requiere de su inmediata asistencia para la protección de vidas o de propiedad; la entrada o registro no puede estar motivada por un intento de arrestar o buscar evidencia, y debe haber alguna relación entre la emergencia y el área o sitio en que se penetra. *Root v. Gauper*, 438 F.2d 361 (8vo Cir. 1971); *People v. Mitchell*, 347 N.E.2d 607 (1976); *State v. Fisher*, 686 P.2d 750 (Ariz. 1984). Por supuesto, tanto

el alcance del registro o entrada como la razonabilidad de la conducta de las autoridades una vez dentro de la propiedad, deberá ser evaluada caso a caso teniendo presente el tipo de emergencia que está ante ellos.

■ Al igual que con las residencias u otro tipo de propiedades, en muchas ocasiones la Policía tiene que entrar en vehículos de motor para ayudar a personas en aparente peligro. Como correctamente ha señalado el Tribunal Supremo federal en *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973), con frecuencia la Policía local tiene ocasión de intervenir con vehículos, mientras ejerce sus funciones, "totalmente divorciados de la detención, investigación, o adquisición de evidencia relacionada con la violación de alguna ley penal" (traducción nuestra), o como señala LaFave, *op. cit.*: "if the police finds a person *unconscious* or disoriented and incoherent in a vehicle, it is reasonable for them to enter the vehicle for the purpose of *giving aid to the person in distress and of finding information bearing upon the cause of his condition*". (Énfasis suplido.) Así lo han reconocido consistentemente los tribunales en Estados Unidos. Véanse: *United States v. Haley*, 581 F.2d 723 (8vo Cir. 1978); *Anchorage v. Cook*, 598 P.2d 939 (Alaska 1979); *People v. Hering*, 318 N.E.2d 757 (1974); *Guardiola v. State*, 375 N.E.2d 1105 (1978); *State v. Kersh*, 313 N.W.2d 566 (Iowa 1981); *State v. Sims*, 426 So. 2d 148 (1983); *Howell v. State*, 300 So. 2d 774 (1974).

■ Aunque hemos resuelto reiteradamente que al interpretar el alcance de nuestras garantías contra registros e incautaciones podemos ir más allá de los límites de la Cuarta Enmienda, *Pueblo v. Malavé González*, supra, que nuestra Constitución goza de una vitalidad independiente de la Constitución de Estados Unidos, *Pueblo v. Dolce*, 105 D.P.R. 422 (1976), y que su interpretación no ha sido ni tiene necesaria-

mente que ser históricamente paralela en todo sentido con la que se ha dado a la Cuarta Enmienda, *Pueblo v. Lebrón,* supra, nos parece que dicha interpretación es sumamente persuasiva y aplicable a nuestra Constitución. Ya en *E.L.A. v. Coca Cola Bott. Co.,* supra, pág. 208, habíamos adoptado dicho enfoque al señalar que "[l]a regla general prevalece, a menos que se consienta al registro, directa o indirectamente, o *circunstancias de emergencia requieran lo contrario* y el peso de los intereses en conflicto exija una solución distinta". (Énfasis suplido.) Este señalamiento ha sido ratificado recientemente en *Pueblo v. Falú Martínez,* 116 D.P.R. 828 (1986).

## II

No tenemos duda de que los hechos que hemos expuesto claramente daban a la Policía suficientes motivos para creer que el conductor del automóvil se encontraba en un estado de emergencia tal que requería de su inmediata asistencia. No tratar de ayudar al recurrente hubiese sido contrario al deber que por su cargo tenían los agentes. La intención de éstos al entrar al automóvil fue brindar al recurrido la ayuda necesaria, y no la de obtener evidencia relacionada con un delito. Al estar justificada, por la situación, la entrada al automóvil, la posterior incautación de los instrumentos sobre los cuales, según el propio tribunal de instancia, tenían "motivos fundados" para creer estaban siendo utilizados para cometer un delito era razonable. Así también lo era cualquier registro de la persona o sus pertenencias, incluso la cajetilla, pues conocer el tipo de droga que había utilizado o cualquier sustancia que hubiese ingerido el recurrido, podía tener una importancia vital para su tratamiento médico.

Resolvemos que, en nuestro caso, la ocupación de la jeringuilla, la chapa y la cajetilla no fue un pretexto y sí fue hecha a manera de ayuda a una persona en aparente peligro, por lo que su incautación fue válida y admisible en evidencia.

Por estos motivos, *se expide el auto, se revoca la resolución recurrida y se devuelve el caso para que continúen los procedimientos compatibles con lo aquí expresado.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita.