El Juez Asociado Señor Estrella Martínez
emitió la opinión del Tribunal.
El recurso ante nuestra consideración nos requiere ana-lizar si el descubrimiento de evidencia mediante la percep-ción por tacto es un corolario de la doctrina de plena vista. Respondemos en la afirmativa, por lo que incorporamos esta excepción al requisito de una orden previa para un registro válido.
I
El Ministerio Público presentó una acusación contra el Sr. Octavio Báez López por el delito de portar un arma de fuego sin licencia para ello. Art. 5.04 de la Ley de Armas de Puerto Rico, 25 LPRA sec. 458c.(1)
Luego de los procedimientos de rigor, el señor Báez Ló-pez solicitó la supresión del arma de fuego incautada. Ar-gumentó que no existía una emergencia que justificara la acción de la agente del orden público de buscar en el interior de su cartera de cintura sin una orden de registro previa. Indicó que, tras sufrir el accidente, no se encon-traba inconsciente y que la agente Rivera Alvarado recibió del paramédico su cartera de cintura, la cual palpó y “sin-tió lo que a su experiencia era un arma de fuego”. Acto seguido, “abrió la cartera y extrajo una pistola Smith & *924 Wesson”. (Énfasis en el original). Moción de supresión de identificación del acusado, Apéndice de la Petición de cer-tiorari, pág. 4. El señor Báez López resaltó que la agente admitió que “su búsqueda en la cartera no tuvo como pro-pósito atender la emergencia en proceso —el accidente de Báez López— sino corroborar su percepción sensorial en la cartera del perjudicado” (énfasis suplido) id., págs. 7-8, y “reconoció que rebuscó su interior para dar en su interior [con] un arma de fuego, no para dar con su identificación”. (Énfasis en el original). íd., pág. 3. El Ministerio Público se opuso a la supresión de evidencia.
El Tribunal de Primera Instancia celebró una vista para dilucidar si procedía la supresión de la evidencia. Durante ésta, y en lo pertinente, el testimonio presentado por la agente Rivera Alvarado revela que acudió a atender un accidente de motora como parte de su patrullaje preventivo. Al llegar al lugar, encontró al señor Báez López un poco aturdido y tirado en el pavimento con la cabeza, manos y piernas ensangrentadas, por lo que llamó al precinto para que enviaran a Emergencias Médicas. Una vez llegaron los paramédicos, le removieron una cartera negra que portaba el señor Báez López de forma transversal en su torso y la entregaron a la agente, quien al palparla sintió un arma de fuego y procedió a abrir la cartera. Así pudo ver que en el interior había una pistola. Luego, el señor Báez López fue trasladado al hospital y allí lo entrevistó la agente. Esta le leyó las advertencias legales y le preguntó sobre el arma. El acusado admitió que no tenía licencia para poseer y portar armas de fuego.
Por otra parte, el paramédico que intervino con el señor Báez López indicó que le removió la cartera y la entregó a la agente. A su vez, testificó que encontró al acusado en el pavimento con sangre en la cara. Señaló que este respon-día a sus preguntas, que dio sus datos personales y que le mencionó que le dolía la cabeza y las rodillas.
*925 Tras escuchar la prueba, el Tribunal de Primera Instan-cia emitió una Resolución en la cual declaró “con lugar” la solicitud de supresión de evidencia. El foro primario con-cluyó que la agente justificó el registro de la cartera a base de una situación de emergencia. Sin embargo, lo que que-ría era verificar si efectivamente había un arma. Así, el tribunal de instancia destacó que si la agente tenía una sospecha de que en el interior de la cartera había un arma, debió solicitar una orden de registro.
En desacuerdo con la determinación del foro de instan-cia, el Ministerio Público presentó un recurso de certiorari ante el Tribunal de Apelaciones. En síntesis, argüyó que el foro primario pasó desapercibido el interés y la facultad investigativa de un agente del orden público, no solo para registrar el bulto con el fin de identificar a una persona herida tras sufrir un accidente de tránsi, sino que, además, para registrarlo una vez percibe inevitablemente un arma de fuego en el interior de ese bulto. Ante ello, el Ministerio Público argumentó que no procedía suprimir la evidencia porque se trató de un registro razonable debido a que: (1) la expectativa de intimidad de un motociclista herido es limitadísima; (2) el accidente justificó el registro de emer-gencia para procurar la identidad del herido, ya que éste estaba aturdido y con contusiones en la cabeza, y (3) una vez el agente de manera inevitable percibe sensorialmente la posible existencia de un arma de fuego en el interior del bulto, se justifica la corroboración de tal percepción, pues se trata de un objeto inherentemente peligroso y altamente reglamentado por el Estado.
Mediante una Resolución emitida el 29 de marzo de 2012, el Tribunal de Apelaciones denegó el recurso de Cer-tiorari presentado por el Ministerio Público. El foro apela-tivo intermedio concluyó que si la agente Rivera Alvarado percibió un arma mediante el tacto, procedía poner bajo arresto al recurrido y hacerle las advertencias, para luego proceder al registro incidental al arresto.
*926 Oportunamente, el Ministerio Público solicitó la recon-sideración ante el Tribunal de Apelaciones. Reiteró sus planteamientos y añadió que el arma se iba a descubrire-ventualmente cuando se preparara el correspondiente re-cibo de propiedad. El foro intermedio declaró “no ha lugar” la solicitud de reconsideración.
Insatisfecho, el Ministerio Público compareció ante este Tribunal y solicitó la revocación de la Resolución emitida por el Tribunal de Apelaciones. Para ello, señaló que erró el tribunal intermedio al validar la supresión del arma de fuego a pesar de que se trató de un registro razonable, porque: (1) la agente tuvo la creencia razonable de la exis-tencia de una emergencia que justificó el registro; (2) el descubrimiento del arma de fuego ilegal hubiese sido inevitable cuando la agente realizara el compulsorio recibo de propiedad de la cartera, y (3) la agente percibió mediante tacto (“plain feel”) el arma de fuego que estaba en el interior del bolso del acusado herido, la cual le fue legítima-mente entregada por el paramédico.
El 4 de junio de 2012 expedimos el recurso ante nuestra consideración. Transcurridos los términos para que las partes presentaran sus respectivos alegatos, procedemos a resolver conforme a derecho.
II
A. La protección contra registros, incautaciones y allanamientos irrazonables es de índole constitucional. La Sec. 10 del Art. II de la Constitución de Puerto Rico, LPRA, Tomo 1, dispone lo siguiente:
No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautacio-nes y allanamientos irrazonables.
No se interceptará la comunicación telefónica.
Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por la autoridad judicial, y ello úni-camente cuando exista causa probable apoyada en juramento *927 o afirmación, describiendo particularmente el lugar a regis-trarse, y las personas a detenerse o las cosas a ocuparse.
Evidencia obtenida en violación de esta sección será inadmi-sible en los tribunales.
Por su parte, la Cuarta Enmienda de la Constitución de Estados Unidos de América, LPRA, Tomo 1, establece:
No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra regis-tros y allanamientos irrazonables, y no se expedirá manda-miento, sino en virtud de causa probable, apoyado por jura-mento o promesa, y que describa en detalle el lugar que ha de ser allanado y las personas o cosas que han de ser detenidas o incautadas.
Ambas disposiciones constitucionales protegen el dere-cho del pueblo contra registros, incautaciones y allana-mientos irrazonables que puedan afectar sus personas, casas, papeles y efectos. Véase E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, Vol. I, pág. 283. La razón de estos pre-ceptos constitucionales es proteger el derecho a la intimi-dad y dignidad del individuo, amparar sus documentos y pertenencias frente a actuaciones irrazonables del Estado, e interponer la figura del juez para ofrecer una mayor ga-rantía de razonabilidad a la intervención con los ciudadanos. Pueblo v. Díaz, Bonano, 176 DPR 601, 611-612 (2009); Blassini et als. v. Depto. Rec. Naturales, 176 DPR 454, 463-464 (2009); Pueblo v. Martínez Torres, 120 DPR 496, 500 (1988); ELA v. Coca Cola Bott. Co., 115 DPR 197, 207 (1984).
A pesar de la similitud de ambas cláusulas constitucio-nales, la contenida en nuestra Constitución limita expre-samente al Ministerio Público con relación al uso que le puede dar al objeto incautado mediante un registro irrazo-nable sin una orden previa. Así, nuestra garantía constitu- *928 cional dispone palmariamente que la evidencia incautada sin una orden previa no se admitirá en los tribunales. 3 Diario de Sesiones de la Convención Constituyente 1566 (1961); Pueblo v. Rivera Colón, 128 DPR 672, 681-682 (1991).(2) Ante ello, y porque nuestra Constitución reconoce y concede unos derechos más abarcadores que los garanti-zados en la Constitución federal, se articula que la Sec. 10 de nuestra Ley Suprema es de factura más ancha. Así, reconocemos como protección mínima la contemplada contra registros e incautaciones a base de la Cuarta Enmienda federal, sin impedimento alguno para ampliar nuestra pro-tección constitucional. Véanse: Blassini et als. v. Depto. Rec. Naturales, supra, pág. 463; Pueblo v. Rivera Colón, supra, pág. 680; Pueblo v. Malavé González, 120 DPR 470, 475-476 (1988); Pueblo v. Falú Martínez, 116 DPR 828, 837 (1986); Pueblo v. Lebrón, 108 DPR 324, 327 (1979); Pueblo v. Dolce, 105 DPR 422, 429 (1976). Además, refiéranse a: Cooper v. State of Cal., 386 US 58, 62 (1967); Sibron v. New York, 392 US 40, 60-61 (1968).
La norma general requiere que se obtenga una orden judicial para efectuar un registro. Pueblo v. Malavé González, supra, pág. 477. Procesalmente, las Reglas 230 a 234 de Procedimiento Criminal, 34 LPRA Ap. II, establecen los requisitos y fundamentos para la expedición de una orden de allanamiento, su forma y contenido, así como el procedimiento para su diligenciamiento, y además, el mecanismo procesal para solicitar la supresión de evidencia ilegalmente obtenida. Pueblo v. Cruz Calderón, 156 DPR 61, 69 (2002).
Ante un reclamo de que se violó el derecho constitucional contenido en la Sec. 10 del Art. II de nuestra *929 Constitución, supra, es necesario dilucidar si, en efecto, hubo un registro que haya infringido la expectativa razo-nable de intimidad que nuestra sociedad reconoce sobre el objeto del registrado. Pueblo v. Ortiz Rodríguez, 147 DPR 433, 442-443 (1999). Para ello, es determinante establecer si la persona tiene un derecho a abrigar una expectativa razonable de intimidad dentro de las circunstancias parti-culares que rodean el caso y si ese derecho está reconocido por nuestra sociedad. Pueblo v. Ortiz Rodríguez, supra. Véanse, además: Smith v. Maryland, 442 US 735, 740-741 (1979); Katz v. United States, 389 US 347 (1967). En este sentido, la exposición del objeto al público, en mayor o me-nor grado, determinará el interés constitucional que se po-see sobre este y repercutirá en el alcance de la protección. O.E. Resumil de San Filippo, Derecho procesal penal, New Hampshire, Ed. Equity, 1990, T. 1, pág. 205. El resultado es que un lugar u objeto gozará de la protección constitucional indicada dependiendo de la naturaleza de la intrusión gubernamental, su efecto sobre la expectativa de intimidad del ciudadano y la necesidad y utilidad del método investigativo utilizado para implantar la ley. Pueblo v. Rivera Colón, supra, pág. 683.
B. Una vez se determina que existe una expectativa razonable de intimidad que puede estar protegida por la garantía constitucional contenida en la Sec. 10 del Art. II de nuestra Constitución, supra, y que en efecto hubo un registro por parte del Estado, se debe realizar un balance de intereses entre esa expectativa y los intereses públicos que hayan motivado la actuación estatal. Pueblo v. Díaz, Bonano, supra, pág. 613; Pueblo v. Yip Berríos, 142 DPR 386, 409 (1997); Pueblo v. Dolce, supra, págs. 434-435.
Este balance no es mecánico. Requiere que se considere la pugna entre la protección de nuestros ciudadanos y el interés de la sociedad por las asolaciones perpetuadas por el crimen. Como hemos expresado, “Muestra tarea es conciliar los intereses en pugna y no permitir que uno pulve- *930 rice al otro. El sistema democrático de vida se funda en la libertad con orden, no en el orden sin libertad o en la libertad que lleve al caos”. Pueblo v. Dolce, supra, pág. 435. Véase, además, Chiesa Aponte, op. cit., págs. 406-407.
Empero, el hecho aislado de que el objeto en controver-sia ha sido incautado sin una orden previa de un tribunal, por sí solo, no conlleva la inadmisibilidad de la evidencia obtenida así. Un registro sin una orden judicial activa una presunción iuris tantum de que este fue irrazonable e inválido. En estos casos, el Estado siempre puede demos-trar que los hechos y la situación particular justifican la intervención policial sin la referida orden, constituyéndose así una excepción a la norma general. Pueblo v. Blase Vázquez, 148 DPR 618, 632—633 (1999); Pueblo v. Santiago Alicea I, 138 DPR 230, 235 (1995); Pueblo v. Malavé González, supra, págs. 476-477. Véanse, también: Missouri v. McNeely, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013); Coolidge v. New Hampshire, 403 US 443 (1971).
Este Tribunal ha adoptado y definido situaciones excepcionales en las que no es indispensable la orden judicial previa. Al hacerlo, hemos sido enfáticos en que cada una de éstas no responden a reglas automáticas y deben examinarse a la luz de los hechos específicos de cada caso. Pueblo v. Blase Vázquez, supra, pág. 633; Pueblo v. Miranda Alvarado, 143 DPR 356, 363 (1997). En todas las instancias mencionadas se ha resuelto que no existe una expectativa razonable de intimidad y que, por lo tanto, no se violenta el mandato constitucional. Entre otras, se han validado las circunstancias siguientes: (1) un registro incidental a un arresto legal, Pueblo v. Pacheco Báez, 130 DPR 664 (1992); Pueblo v. Malavé González, supra; Pueblo v. Zayas Fernández, 120 DPR 158 (1987); Pueblo v. Costoso Caballero, 100 DPR 147 (1971);(3) (2) un registro consen- *931 tido voluntariamente de forma expresa o implícita, Pueblo en interés menor N.O.R., 136 DPR 949 (1994); Pueblo v. Narváez Cruz, 121 DPR 429 (1988); Pueblo v. Acevedo Escobar, 112 DPR 770 (1982); Pueblo v. Tribunal Superior, 96 DPR 270 (1968); (3) un registro en situación de emergencia, Pueblo v. Rivera Collazo, 122 DPR 408 (1988); (4) una evidencia ocupada en el transcurso de una persecución, Pueblo v. Riscard, 95 DPR 405 (1967); (5) una evidencia a plena vista, Pueblo v. Cruz Torres, 137 DPR 42 (1994); Pueblo v. Muñoz, Colón y Ocasio, 131 DPR 965 (1992); Pueblo v. Dolce, supra; (6) cuando el agente del orden público ob-tiene conocimiento de la existencia del material delictivo por el olfato, Pueblo v. Acevedo Escobar, supra, pág. 779; Pueblo v. Díaz, Bonano, supra; (7) una evidencia arrojada o abandonada, Pueblo v. Ortiz Zayas, 122 DPR 567 (1988); Pueblo v. Ortiz Martínez, 116 DPR 139 (1985); Pueblo v. Lebrón, supra; (8) un registro o allanamiento de una es-tructura abandonada, Pueblo v. Erausquín Martínez, 96 DPR 1 (1968); (9) una evidencia obtenida durante un registro administrativo, Pueblo v. Sánchez Molina, 134 DPR 577 (1993); Pueblo v. Rodríguez Rodríguez, 128 DPR 438 (1991), siempre que se cumpla con las limitaciones expresadas por este Tribunal en Blassini et als. v. Depto. Rec. Naturales, supra; (10) un registro tipo inventario, Pueblo v. Rodríguez Rodríguez, supra;(4) u (11) una evidencia obtenida en un lugar público —como el aeropuerto— como re- *932 sultado de la utilización de canes para olfatear, Pueblo v. Díaz, Bonano, supra.
Ill
Ante esta Curia, el Procurador General sostiene que no procede la supresión de evidencia. Explica que el registro no fue irrazonable e invoca tres excepciones para la admi-sibilidad de la prueba. Específicamente, sostiene que: (1) el registro se efectuó durante una situación de emergencia; (2) se hubiese descubierto el arma de fuego inevitable-mente al realizarse un recibo de propiedad, y (3) la agente percibió el arma de fuego mediante el tacto. Discutamos cada una de estas excepciones.
A. Situación de emergencia
Los registros de emergencia son una excepción a la inadmisibilidad de evidencia obtenida mediante un registro sin una orden previa. Véase ELA v. Coca Cola Bott. Co., supra, págs. 207-208. A estos efectos, debemos recordar que lo constitucionalmente prohibido es el registro irrazonable. Lo que constituye una emergencia suficiente para validar un registro sin previa orden dependerá del grado de emergencia versus la expectativa razonable de intimidad que se pueda oponer frente al Estado.
En lo particular, en Pueblo v. Rivera Collazo, supra, este Tribunal adoptó la excepción de situaciones de emergencia para admitir prueba incautada sin una orden judicial. De esta manera, avalamos las actuaciones de unos agentes del orden público cuando, al no llegar una ambulancia, actua-ron para socorrer a un conductor de un automóvil que es-taba inconsciente, con dificultad al respirar y quien reque-ría de asistencia inmediata. Durante el proceso, los agentes observaron unas jeringuillas y abrieron una caje-tilla de cigarrillos dentro de la cual había un sobre con cocaína. Este Tribunal enfatizó que la intención de los *933 agentes fue ayudar al ciudadano accidentado y no obtener evidencia relacionada con un delito. Ante tales hechos, cualquier registro a la persona o a sus pertenencias era vital para el tratamiento médico. íd., pág. 419. Sin embargo, ello no significa que todo accidente de tránsito cons-tituya, por sí mismo, una emergencia médica que conlleve la aplicación de la excepción propia de una situación de emergencia.
Otras situaciones que constituyen una emergencia son: entrar a un lugar para salvar la vida o propiedad; investi-gar lo que parece peligroso para la seguridad pública y privada, independientemente del tipo de delito imputado o de la existencia o no de un sospechoso, y socorrer u ofrecer asistencia a una persona que se encuentra en peligro o necesidad. Véase Chiesa Aponte, op. cit., págs. 450-451.
Ahora bien, la mera alegación de emergencia infundada y sin explicar es insuficiente para la admisibilidad de la evidencia. El Estado está obligado a demostrar que tenía una creencia razonable de que existía una emergencia. No existen circunstancias categóricas que constituyan de por sí una situación de emergencia. Los tribunales debemos examinar la totalidad de las circunstancias para determinar si un oficial del orden público encara una situación de emergencia que le permita registrar sin una orden. Véase Missouri v. Mcneely, supra. Los tribunales deben evaluar rigurosamente la prueba presentada. Así, hemos expresado que “[l]a Policía debe tener la creencia razonable de que existe una emergencia que requiere de su inmediata asistencia para la protección de vidas o de propiedad; la entrada o registro no puede estar motivada por un intento de arrestar o buscar evidencia, y debe haber alguna relación entre la emergencia y el área o sitio en que se penetra”. Pueblo v. Rivera Collazo, supra, pág. 417.
B. Descubrimiento inevitable
La doctrina de descubrimiento inevitable se em-plea para evitar la supresión de aquella evidencia obtenida *934 sin una orden de registro que está estrechamente vincu-lada con una intervención ilegal.(5) Mediante esta, se per-mite la admisibilidad de la prueba si esta última hubiese sido detectada inevitablemente; es decir, que de todas for-mas iba a ser legalmente obtenida. La justificación para permitir la admisibilidad de la prueba consiste en evitar que se coloque al Estado en una posición peor de la que estaba antes de la actuación ilegal.(6)
Para que aplique la doctrina del descubrimiento inevitable, el Estado debe demostrar que existía una investigación en curso que hubiera permitido obtener la misma evidencia objeto de la supresión. En aquellos casos en que el Estado invoque la doctrina de descubrimiento inevitable, amparándose en que realizaba una investigación, debe demostrar que: (1) realizaba una investigación legal que seguramente hubiera producido la misma evidencia; (2) la investigación la realizaron agentes distintos a los que actuaron ilegalmente, y (3) la investigación estaba en curso cuando ocurrió la actuación ilegal. Véase C.H. Whitebread y C. Slobogin, Criminal Procedure: An Analysis of Cases and Concpets, Nueva York, Ed. Foundation Press, 2000, pág. 46.
De igual modo, aplica la doctrina de descubrimiento inevitable si a través de un procedimiento rutinario o estandarizado se hubiera permitido el descubrimiento de la evidencia objetada.(7) En otras palabras, si el Estado *935 demuestra que existen normas o procedimientos habitua-les mediante los cuales lo obtenido ilegalmente hubiera sido encontrado de forma legal, entonces no procede la supresión. Ello pues, por lo general, este tipo de procedi-miento estandarizado es razonable, ya que el registro es limitado en su extensión y responde a una función necesa-ria para la protección: (1) del interés propietario del dueño; (2) de los policías o custodios del reclamo de pérdida o daño a la propiedad custodiada, y (3) de los agentes ante la po-sibilidad de algún daño. Véanse: Florida v. Wells, 495 US 1 (1990); Colorado v. Bertine, 479 US 367 (1987); Illinois v. Lafayette, 462 US 640 (1983); South Dakota v. Opperman, 428 US 364, 376 (1976); U.S. v. Infante-Ruiz, 13 F.3d 498, 503-504 (1er Cir. 1994);(8) People v. Bayles, 82 Ill. 2d 128 (1980), 411 N.Ed 1346, cert. denegado, Illinois v. Bayles, 453 US 923 (1981); Chiesa Aponte, op. cit., págs. 321-325. Véase, también, 3 LaFave, Search and Seizure: A Treatise on the Fourth Amendment Sec. 5.5(b) (5ta ed. 2012); 3 LaFave, Israel, King and Kerr, Criminal Procedure, Sec. 9.3(e) (3ra ed. 2007).
Claro está, corresponde al Ministerio Público presentar la evidencia que sostenga que el descubrimiento del objeto hubiese sido inevitable. Para ello, podrá presentar la polí-tica escrita, el testimonio del agente o establecer el tipo de rutina a seguir. U.S. v. Infante-Ruiz, supra, pág. 503.
C. Percepción mediante los sentidos
La percepción mediante los sentidos constituye otra de las excepciones a la regla general de inadmisibilidad de prueba obtenida sin una orden de registro. La norma general es que no existe protección constitucional contra la inspección de objetos que están a la plena percep- *936 ción de los agentes. Para que proceda la admisibilidad de la evidencia es necesario que exista una justificación para que los agentes estén en el lugar desde el cual percibieron el objeto y la incautación surja por la percepción misma y no del registro realizado. Chiesa Aponte, op. cit., pág. 434. Precisamente, se ha permitido la admisibilidad de objetos que se encuentren a plena vista o aquellos que se perciban mediante el olfato. Para una mejor comprensión de la ex-cepción, exponemos brevemente su trasfondo.
Uno de los casos normativos sobre la excepción de per-cepción mediante los sentidos es Coolidge v. New Hampshire, supra. En éste, el Tribunal Supremo de Estados Uni-dos suprimió cierta evidencia obtenida en un caso de asesinato en primer grado, por lo que revocó la convicción del acusado. Al así hacerlo, la Corte Suprema de Estados Unidos discutió y delimitó los contornos de la doctrina de descubrimiento a plena vista. No obstante, el Máximo Foro Federal concluyó que la doctrina de la excepción de plena vista no aplicaba a los hechos ante su consideración.
Concretamente, y en lo pertinente, en Coolidge v. New Hampshire, supra, la Corte explicó que el razonamiento de la doctrina de la excepción de plena vista no conflige con el objetivo de las garantías constitucionales de la Cuarta Enmienda por dos razones sustanciales. De primer plano, la excepción de la doctrina de plena vista no ocurre hasta que hay un registro en proceso y, en segundo lugar, el descubrimiento haya ocurrido inadvertidamente. Además, se estableció que para que la doctrina aplique es necesario que: (1) el agente del orden público esté legalmente en el lugar desde el cual percibió el objeto incautado; (2) el descubrimiento haya ocurrido inadvertidamente;, y (3) la apariencia delictiva del objeto incautado haya surgido inmediatamente. Por lo tanto, el hecho aislado de que una cosa esté a simple vista no es suficiente para que aplique la excepción. Id., págs. 466-473. Véase LaFave, supra, Vol. 1, Sec. 2.2(a).
*937 La doctrina de la percepción a plena vista evolucionó. En la jurisdicción federal, el que el objeto haya sido descubierto inadvertidamente ya no constituye un factor necesario. Ahora bien, basta que exista una justifica-ción independiente para que el agente del orden público esté legalmente en el lugar desde el cual percibió el objeto y el carácter incriminatorio de este sea aparente o exista causa probable para creer que el mismo constituye eviden-cia de crimen, de contrabando o de conducta delictiva. Véanse: Chiesa Aponte, op. cit., pág. 439; Horton v. California, 496 US 128 (1990); Texas v. Brown, 460 US 730, 742 (1983).(9)
Igualmente, en la jurisdicción federal la doctrina de la percepción prosperó para incluir otros sentidos adicionales al de la vista. A estos efectos, se ha reconocido la inclusión de evidencia que se puede escuchar ("plain hearing”), olfatear ("plain smell”) o percibir mediante el tacto ("plain feel or touch”) por los agentes del orden público. LaFave, supra, Vol. 1, Sec. 2.2(a).
El profesor Chiesa abunda sobre este particular al esta-blecer que:
[...] no hay protección constitucional contra la inspección de objetos que están a la plena percepción de los agentes, siempre que la presencia de los agentes en el lugar esté independien-temente justificada. Para ocupar o incautarse del objeto, la incautabilidad debe también surgir de la percepción del objeto y no de su registro. Además, hay que justificar independiente-mente el acceso al lugar de la incautación. (Énfasis suplido). Chiesa Aponte, op. cit., pág. 434.
El distinguido tratadista sostiene que de ordinario se alude a la vista, pero que la doctrina se extiende a todos los sentidos. Chiesa Aponte, op. cit., pág. 441 esc. 428.
*938 Consciente de este desarrollo judicial, este Tribunal incorporó en nuestro ordenamiento jurídico la admisión de evidencia incautada sin una orden previa cuando esta se encuentra a plena percepción del agente del orden público. Desde Pueblo v. Dolce, supra, establecimos los criterios a considerar para admitir evidencia cuando determinado objeto incautado sin una orden judicial se encontraba a plena vista previo al registro; a saber: (1) el artículo debe ser descubierto por estar a plena vista y no en el curso de o por un registro; (2) el agente debe haber tenido un derecho previo a estar en la posición desde la cual se percató del objeto a ser incautado; (3) el objeto debió descubrirse inad-vertidamente, y (4) la naturaleza delictiva del objeto debe surgir de la simple observación. íd., pág. 436.
Posteriormente, en Pueblo v. Acevedo Escobar, supra, mantuvimos la admisibilidad de cierta evidencia ocupada sin una orden de registro al advertir que el agente “percibió el olor de la marihuana”, por lo que reconocimos que “a través del sentido del olfato pudo apreciar y derivar el conocimiento de su existencia”. íd., pág. 779. Con este proceder, este Tribunal expresamente reconoció que la per-cepción mediante el olfato guarda analogía y equivalencia funcional a las situaciones en que se aplica la doctrina de prueba a plena vista, con la única diferencia en el modo como el objeto es detectado. Indicamos que uno se percibe con el sentido de la visión y otro con el del olfato, por lo que no existe fundamento para descartar el valor lógico y jurídico de esa percepción. íd.
Hoy este Tribunal no ha tenido la oportunidad de expre-sarse en cuanto a la analogía de la doctrina de plena vista a lo que los agentes palpan mediante tacto. Por tal razón, enmarcamos el análisis en lo discutido y resuelto por la Corte Suprema de Estados Unidos.
En la jurisdicción federal existía la discusión en torno a si la percepción mediante el tacto era análoga a la doctrina de plena vista o el descubrimiento mediante el sentido del *939 olfato. En esencia, el debate se centraba en si el sentido del tacto podía ser tratado de igual forma que el de la vista y, de ello ser así, qué circunstancias permitían a un agente del orden público estar en una posición en la que palpar un objeto no viola las garantías constitucionales. Véase LaFave, Israel, King and Kerr, supra, Vol. 2, Sec. 3.2(b), págs. 76-79.
En un principio, se planteaba que la doctrina de percep-ción mediante el tacto no era algo diferente de la de plena vista, sino un corolario inevitable de esta. Más aún, se ad-vertía que el caso Terry v. Ohio, 392 US 1 (1968), fue un presagio en cuanto a la doctrina de percepción mediante el tacto, porque se validó la percepción de un arma de fuego mediante ese sentido. Para que prosperara el descubri-miento mediante el tacto, se proponía requerir que el agente: (1) se encontrase legalmente justificado a estar en el área desde la cual pudo palpar y percibir el objeto; (2) tuviera un motivo independiente para poder colocar sus manos en la propiedad o persona, y (3) adquiriera, simul-táneamente con su sentido táctil, la creencia de que el objeto percibido constituye una evidencia de crimen o contrabando, o que puede incautarse. Véase L.E. Holtz, The “Plain Touch” Corollary: a Natural and Foreseeable Consequence of the Plain View Doctrine, 95 Dick. L. Rev. 521 (1991).
No es hasta que la Corte Suprema federal resolvió Minnesota v. Dickerson, 508 US 366 (1993), que se disipó cual-quier duda sobre si la percepción mediante el tacto consti-tuye una secuela permisible de la doctrina de descubri-miento a plena vista. La Corte Suprema federal resolvió esta interrogante, sin ambigüedad, en la afirmativa. íd., págs. 375-378.
Los hechos en Minnesota v. Dickerson, supra, surgen cuando dos agentes del orden público intervienen con un sujeto para investigarlo.(10) Durante este proceso, los agen- *940 tes realizaron un cateo sobre el sujeto. No encontraron ar-mas, pero uno de los oficiales sintió un bulto en el abrigo de nilón del individuo. El agente escudriñó con sus dedos y pensó que era crack en una bolsa de celofán. Inmediata-mente, el agente sacó el objeto del bolsillo de la persona y, en efecto, confirmó sus sospechas. Como consecuencia, se acusó al individuo por violaciones a la ley de sustancias contro-ladas. El imputado solicitó la supresión de la evidencia. La corte inferior determinó la validez de la incautación al rea-lizar una analogía con la doctrina de descubrimiento a plena vista. Luego, encontró culpable al imputado. Durante la apelación, la Corte de Apelación de Minnesota revocó el dic-tamen del foro primario al declinar la aplicación de la doc-trina de descubrimiento mediante el tacto.
La Corte de Apelación de Minnesota rehusó extender la doctrina de plena vista al sentido del tacto, razonando por-que es menos confiable que el de la vista y mucho más intrusivo a la privacidad del individuo. Asimismo, expresó que la acción realizada por el agente excedió lo permisible. Por su parte, el Tribunal Supremo federal, luego de adop-tar la doctrina de descubrimiento mediante el tacto, con-firmó a la Corte de Apelación de Minnesota por entender que no se cumplieron con los requisitos para aplicar la re-ferida doctrina. Ese análisis es el que resulta importante al caso de autos. Abundamos.
En cuanto al descubrimiento mediante la percepción o el tacto, la Corte Suprema federal expresamente deter-minó que esta doctrina tiene una aplicación obvia por ana-logía a casos en los que un oficial descubre contrabando a través del sentido del tacto durante un registro legal. Para descartar las justificaciones de la corte apelativa, el Tribu *941 nal Supremo federal citó en su análisis a Terry v. Ohio, supra, y resaltó que en este caso se reconoció que mediante el sentido del tacto se puede revelar la naturaleza de un objeto con suficiente confiabilidad para detectar la presen-cia de armas de fuego y permitir su incautación. Además, indicó que, incluso, de ser cierto que el sentido del tacto es generalmente menos confiable que el de la vista, ello sola-mente implicaría que los oficiales se amparen en esta jus-tificación con menor frecuencia. A su vez, descartó el temor a incautaciones especulativas debido a que en este tipo de casos la existencia de causa probable siempre será un prerequisite para el registro. Más aún, la Corte Suprema federal concluyó que no puede existir una invasión adicional a la privacidad del individuo cuando lo que se registra es un objeto cuya identidad es ya conocida. Minnesota v. Dickerson, supra, págs. 376-377.(11)
Acto seguido, la Corte Suprema federal avaló la decisión de la corte apelativa de Minnesota. Concluyó que en las cir-cunstancias del caso ante su consideración, el agente se en-contraba legalmente en una posición desde la cual podía percibir el objeto. Empero, no pudo inferirse inmediata-mente la naturaleza incriminatoria del objeto. Cuando el agente apretó, manipuló y palpó el objeto, rebasó los límites legales que justificaban su intervención original, por lo que su registro fue ilegal. A pesar de ello, reiteró que “una vez *942 más, la analogía con la doctrina de plena vista es acertada”. (Traducción nuestra).(12) Minnesota v. Dickerson, supra, pág. 378.
Al analizar el precedente en Minnesota v. Dickerson, supra, el tratadista de derecho criminal Wayne R. LaFave expone que la lógica de la decisión consiste en afirmar que la doctrina de percepción mediante el tacto justifica un re-gistro sin orden. Ello, pues el acto de palpar hace tan cer-tero e inmediatamente aparente lo que es el objeto que resulta innecesaria una orden judicial que garantice la protección constitucional bajo examen. LaFave, supra, Vol. 1, Sec. 2.2(a), págs. 605 y 608-614; LaFave, Israel, King and Kerr, supra, supra, Vol. 2, Sec. 3.2(b), pág. 78. Véase, además, J.D. Harvey, Jr., Minnesota v. Dickerson: Sense of Touch and the Fourth Amendment, 21 Okla. City U.L. Rev. 151, 170 (1996).
Surge con meridiana claridad del marco doctrinal antes reseñado que hoy está resuelto, en la esfera federal, que la percepción mediante el tacto es un derivado del descubrimiento a plena vista. La percepción a plena vista ha sido acogida por este Tribunal como una de las excepciones al requisito de una orden judicial previa a un registro. Ello, pues no hay protección constitucional contra la inspección que está a plena percepción de los agentes. Como consecuencia, y por analogía, no vacilamos en extender la excepción a la percepción por medio del olfato, ya que la doctrina se extiende a todos los sentidos. Chiesa Aponte, op. cit., págs. 434 y 441 esc. 428. Por lo tanto, no vemos razón alguna para impedir que la percepción mediante el tacto constituya una excepción al registro judicial sin una orden previa. Sin lugar a dudas, la percepción mediante el tacto es un equivalente razonable de la doctrina de plena vista.
*943 Para que la percepción mediante el tacto justifique la incautación del objeto sin una orden previa, será necesario que: (1) el objeto se haya descubierto porque se palpó y no por su registro; (2) exista una justificación legal para que el agente esté en el lugar desde donde pudo entrar en contacto con la evidencia; (3) el oficial del orden público contactó la evidencia de forma inadvertida, y (4) la naturaleza delictiva del objeto surge inmediata y razonablemente a través del sentido del tacto sin que el agente lo pueda manipular o escudriñar en forma alguna. Véase K.W. Inverson, “Plain Feel”: a Common Sense Proposal Following State v. Dickerson, 16 Hamline L. Rev. 247, 277-278 (1992-1993).
Aunque la doctrina no provee autoridad a los agentes para tocar indiscriminadamente, sí permite que un agente del orden público interprete lo que pudo percibir mediante el tacto, siempre y cuando haya una justificación para ello. Al igual que el descubrimiento a plena vista, la doctrina de percepción mediante el tacto puede servir de base para que agentes del orden público se excedan en sus intervenciones en violación a la garantía constitucional. Es aquí donde es importante la prudencia en las decisiones, a base de las circunstancias particulares de cada caso. Corresponde a los tribunales la tarea de discernir si existían razones sufi-cientes para que el agente del orden público percibiera in-mediatamente mediante su sentido del tacto la informa-ción suficiente para concluir que, en efecto, el objeto era lo que creía. Una vez la identidad y naturaleza del objeto advienen inminentemente aparentes mediante el tacto, no hay una intromisión con los derechos del individuo. Ello, pues no hay necesidad de una orden previa para descubrir lo que su sentido del tacto ya reveló. Minnesota v. Dickerson, supra, págs. 376-377; U.S. v. Portillo, 633 F.2d 1313, 1320 (9no Cir. 1980), cert. denegado, 450 US 1043 (1981); B. Andrew Harvey, Minnesota v. Dickerson and the Plain Touch Doctrine: a Proposal to Preserve Fourth Amendment *944 Liberties during Investigatory Stops, 58 Alb. L. Rev. 871, 904-905 (1994-1995).
El juzgador debe sopesar el hecho de que existen objetos que son fácilmente reconocibles, pues tienen una consis-tencia y forma distintivas. Más aún, el entrenamiento y experiencia de los agentes del orden público les permite reconocer e identificar tales objetos a través de su sentido del tacto de la misma forma que identifican un objeto mediante el sentido de la vista. U.S. v. Pace, 709 F.Supp. 948, 955 (C.D. Cal. 1989), confirmado en 893 F.2d 1103 (9no Cir. 1990) (“objects have a distinctive and consistent feel and shape that an officer has been trained to detect and has previous experience in detecting, then touching these objects provides the officer with the same recognition his sight would have produced”).
Con el marco doctrinal antes expuesto, pasemos a ana-lizar si procedía la supresión de la evidencia incautada.
IV
En el caso de autos se solicitó la supresión de un arma de fuego incautada sin una orden judicial previa durante la intervención de una agente de la policía al atender un ac-cidente de motora. El arma de fuego se encontraba en una cartera que poseía el señor Báez López y que el paramédico que ofreció asistencia durante el accidente entregó a la agente. Al recibir la referida cartera, la agente palpó el arma de fuego y procedió a abrir el bolso. Estos hechos no están en controversia.
Conforme a lo discutido, la garantía constitucional protege a todo objeto en el cual se albergue una expectativa razonable de intimidad. Ciertamente, los efectos persona-les —como lo es la cartera del señor Báez López— están protegidos por la garantía constitucional contra registros irrazonables. Como condición para su incautación, la norma general requiere que haya una orden judicial previa *945 a menos que el Estado justifique que procede aplicar una excepción. Por lo tanto, y aunque existe una expectativa de intimidad sobre los efectos personales, esta no es absoluta. Pueblo v. Bonilla, 149 DPR 318, 329 (1999); U.S. v. Chadwick, 433 US 1 (1977). En este caso federal se estableció que, como regla general, se requiere una orden judicial para registrar los efectos personales. Sin embargo, ello no significa que todo registro de un efecto personal sin una orden previa es inválido per se. Así, se ha establecido la legalidad de un registro cuando los efectos personales están a plena vista y se cree que son de valor evidenciario. Véanse: LaFave, supra, Vol. 3, Sec. 5.5(c), págs. 316 y 320; People v. Wright, 804 P.2d 866 (Colo. 1991), 11 ALR5th 947.
El Ministerio Público invoca tres excepciones al requi-sito de una orden judicial previa al registro de la cartera del señor Báez López. Veamos si alguna de éstas aplica.
En primer y segundo lugares, el Ministerio Público nos señala que la agente creyó que estaba ante una situación urgente y que el arma de fuego de todos modos hubiera sido descubierta al realizarse un recibo de propiedad. Nin-guna de estas excepciones aplica al caso de autos.
Un examen ponderado de la prueba presentada demues-tra que no se dan los criterios para que se aplique la doc-trina de situación de emergencia como una excepción al re-quisito de una orden judicial previa. Aunque ciertamente el señor Báez López fue atendido durante un accidente de mo-tora, este no estaba inconsciente ni aturdido a tal grado que no pudiera colaborar para su pronta atención médica. Por el contrario, conforme al testimonio del paramédico que lo atendió, el señor Báez López contestó sus preguntas, sumi-nistró sus datos personales e, incluso, le expresó dónde sen-tía dolor. Ante ello, y al igual que el foro primario, entende-mos que la agente Rivera Alvarado no podía albergar la creencia razonable de que estaba ante una urgencia. Más aún, sus actuaciones al abrir la cartera así lo demuestran ya que, una vez encontró el arma de fuego, desistió de indagar *946 sobre los datos personales del señor Báez López. Los hechos relatados demuestran que no existen las circunstancias que permitieran justificar la excepción de una situación de emergencia para validar el registro.
De otra parte, durante el proceso apelativo, el Ministerio Público invocó la excepción del descubrimiento inevitable. Arguye que la evidencia iba a ser descubierta inevitable-mente al realizarse un recibo de propiedad. Sin embargo, al sostener que aplica la referida excepción, el Ministerio Pú-blico no cumplió con su deber de demostrar cuál es el proce-dimiento de recibo de propiedad que aplica a las circunstan-cias de autos. Simple y llanamente, el Ministerio Público se limita a alegar que existe un procedimiento de recibo de propiedad. No existe un ápice de prueba sobre cómo se im-plementa este procedimiento, si aplica para situaciones como las que están ante nuestra consideración o si es ruti-nario o estandarizado. Por lo tanto, el Ministerio Público no cumplió con su obligación de demostrar que procedía aplicar la referida excepción.
Por último, el Ministerio Público sostiene que no pro-cede la supresión del arma de fuego, ya que ésta se obtuvo luego de que la agente la percibiera mediante el tacto en el interior de la cartera del acusado que el paramédico le en-tregó legítimamente. Así, sostiene que la incautación sur-gió de la percepción del objeto y no de su registro, por lo que aplica por analogía la doctrina de percepción mediante el tacto.
Conforme a lo discutido, en nuestra jurisdicción se per-mite ocupar un objeto sin una orden judicial previa si el agente estaba legítimamente en una posición en la que pudo percibir la evidencia por alguno de sus sentidos, lo cual incluye la percepción mediante el tacto. Según lo in-dicamos anteriormente, para que proceda aplicar la excep-ción señalada, debe existir un motivo válido para que la agente estuviera en el lugar desde el cual pudo palpar el objeto e inferir la naturaleza delictiva de este sin necesi-dad de manipular o escudriñarlo en forma alguna.
*947 Estimamos que en las circunstancias ante nuestra con-sideración aplica la doctrina de percepción mediante el tacto. Los hechos demuestran que la agente del orden pú-blico arribó al lugar para atender un accidente de motora que tuvo el señor Báez López. Como parte de sus funcio-nes, la agente tramitó asistencia para ofrecer los primeros auxilios. Al llegar el paramédico, este le entregó la cartera del señor Báez López para proceder a atenderlo. Una vez la agente recibió la cartera y sintió lo que, a su juicio y según su experiencia, era un arma de fuego, procedió a abrir la cartera y encontrar en su interior con el referido objeto. Véase Moción de supresión de identificación del acusado, Apéndice de la Petición de certiorari, págs. 4 y 7-8.
Lo expuesto demuestra que la agente del orden público se encontraba legítimamente en el lugar desde donde pudo percibir el objeto. A su vez, esta advino en contacto con la referida arma de fuego de forma inadvertida cuando el pa-ramédico le entregó la cartera. En ese momento, y no me-diante un registro, la agente percibió el arma de fuego. La naturaleza del objeto surgió por la percepción mediante el tacto que tuvo la agente al tocar la cartera. Al abrir la car-tera del señor Báez López no hubo una invasión a su priva-cidad ya que, en efecto, fue al palpar la cartera que la agente supo del arma de fuego. En este contexto, no procede la protección constitucional contra un registro sin una orden judicial previa. No podemos olvidar que un arma de fuego es un objeto con características particulares a las cuales los agentes del orden público están diariamente expuestos, por lo que indudablemente, como regla general, estos pueden reconocerlos por la mera percepción del sentido del tacto.
En el caso de autos se produjeron las circunstancias que justifican la aplicación de la doctrina de percepción me-diante el tacto, por lo que no procedía la supresión de la evidencia incautada.
*948 V
Por las razones expuestas, se revoca al Tribunal de Ape-laciones y se devuelve el caso al Tribunal de Primera Ins-tancia para la continuación de los procedimientos de acuerdo con lo aquí resuelto.
La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente, a la cual se unió el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.

 Pistola Smith & Wesson negra, calibre .40 mm, modelo XDM-40, cargada con una munición en recámara y 15 municiones.

 Nótese que, a nivel federal, es mediante jurisprudencia que se resuelve que es inadmisible aquella evidencia obtenida en violación a la Cuarta Enmienda de la Constitución federal. Véanse: Mapp v. Ohio, 367 US 643 (1961); E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, Vol. I, págs. 290-291.

 Recordamos que no se permite un registro sin una orden de allanamiento aunque sea contemporáneo a un arresto válido si el área no está al alcance de la persona arrestada. El propósito de ello es ocupar armas que puedan ser empuñadas *931 y utilizadas por el acusado para agredir a los agentes del orden público o para in-tentar una fuga, y para ocupar evidencia que de otro modo se pueda destruir. La doctrina no convalida todo registro incidental a un arresto efectuado legalmente. Véanse: Pueblo v. Cruz Torres, 137 DPR 42, 47 (1994); Pueblo v. Costoso Caballero, 100 DPR 147, 152-153 (1971); Pueblo v. Dolce, 105 DPR 422, 434-435 (1976).

 Esta excepción tiene lugar cuando se convalida un registro como parte de un procedimiento rutinario y estandarizado de hacer un inventario para salvaguardar el contenido de los objetos que por ley la Policía mantiene bajo su control en espera de que se lleve a cabo un procedimiento de confiscación. La excepción requiere al Estado demostrar que procede prima facie la incautación preliminar de la propiedad con el propósito de confiscarla, que existe un procedimiento o unas guías establecidas para este tipo de situaciones y que esa acción se efectúa siguiendo estrictamente el pro-cedimiento establecido.

 En este sentido, se dice que el objeto del “fruto del árbol ponzoñoso” se admite cuando cumple con cualquiera de las doctrinas siguientes: (1) vínculo atenuado; (2) fuente independiente, y (3) descubrimiento inevitable.

 Véase la discusión del descubrimiento inevitable mediante una investiga-ción, discutido en la opinión disidente del Hon. Federico Hernández Denton en Pueblo v. González, 167 DPR 350, 358-359 (2006) (Sentencia). Véase, también, Nix v. Williams, 467 US 431 (1984).

 Este tipo de procedimiento estandarizado puede ser los registros de inventa-rio, registros en aeropuertos o registros en la frontera. En cuanto al registro tipo inventario como un procedimiento rutinario, refiérase a Pueblo v. Rodríguez Rodríguez, 128 DPR 438 (1991). Dicho procedimiento no aplica al caso de autos, pues no estamos ante un proceso de confiscación o incautación con relación a una persona que ha sido arrestada o ingresada en una institución penal.

 En este caso se suprimió un arma de fuego que se encontraba en un bulto dentro del baúl del vehículo arrendado en el que fue detenido el acusado mientras transitaba por La Parguera, Lajas, Puerto Rico. Entre otras, descartó el descubri-miento inevitable debido a la ausencia de evidencia en cuanto al procedimiento ru-tinario realizado por la Policía en estos casos. '

 En el caso Horton v. California, 496 US 128 (1990), la Corte Suprema federal estableció que el carácter inadvertido del descubrimiento o percepción del objeto no es esencial. Véase Pueblo v. Cruz Torres, supra, pág. 53, opinión concurrente de la Juez Asociada Señora Naveira de Rodón.

 La intervención original realizada por el agente del orden público está validada en lo federal en el caso Terry v. Ohio, 392 US 1 (1968). Ello no afecta la apli- *940 cación de la doctrina de descubrimiento mediante el tacto en otras instancias. En Puerto Rico no se ha extendido expresamente la norma de Terry v. Ohio, supra, como tampoco ha sido rechazada categóricamente. Pueblo en interés menor N.O.R., 136 DPR 949, 963 (1994). De igual forma, en Puerto Rico hemos reconocido que un agente del orden público puede detectar armas mediante el tacto al permitirse el cateo de los individuos durante un arresto válido. Pueblo v. Costoso Caballero, supra; Pueblo v. Sosa Díaz, 90 DPR 622, 631 (1964).

 El Tribunal Supremo federal señaló en Minnesota v. Dickerson, supra, págs. 376-377, lo siguiente:
“First, Terry itself demonstrates that the sense of touch is capable of revealing the nature of an object with sufficient reliability to support a seizure. The very premise of Terry, after all, is that officers will be able to detect the presence of weapons trough the sense of touch and Terry upheld precisely such a seizure. Even if it were true that the sense of touch is generally less reliable than the sense of sight, that only suggests that officers will less often be able to justify seizures of unseen contraband. Kegardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment’s requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures. The court’s second concern —that touch is more intrusive into privacy than is sight— is inapposite in light of the fact that the intrusion the court fears has already been authorized by the lawful search for weapons. The seizure of an item, whose identity is already known occasions no further invasion of privacy”. (Énfasis suplido y escolio omitido).

 El texto original en inglés es el siguiente: “Once again, theanalogy to the plain-view doctrine is apt”.