**Drew Wayne ODOM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–05–674–CR.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 24, 2006.

Heather Harrison Hall, Humble, for appellant.

Marc Brumberger, Asst. Dist. Atty., Michael A. McDougal, Dist. Atty., Conroe, for state.

Before Justices HINOJOSA, RODRIGUEZ, and GARZA.

## OPINION

Opinion by Justice RODRIGUEZ.

This is an appeal from a conviction for the offense of possession of a controlled substance and possession of a chemical with the intent to manufacture. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (Vernon 2003), § 481.124 (Vernon Supp.2005). By four issues, appellant, Drew Wayne Odom, contends, among other things, that his Fourth Amendment rights were violated when law enforcement

officers searched his residence without a warrant. Appellant asserts that his refusal of consent at the time of the search was dispositive as to him, regardless of the consent of a third party who was not present at the time of the search. The State concedes error in light of the United States Supreme Court decision in *Georgia v. Randolph*, —— U.S. ——, ——, 126 S.Ct. 1515, 1520, 164 L.Ed.2d 208 (2006), an opinion issued after the trial of this case. We reverse and remand.

## I. Background

Pursuant to a report of suspicious activity, a warrantless search was conducted of a building where appellant had been living for approximately three months. M.O. Sims, appellant's brother-in-law, claimed that he was the property owner and gave "permission to search the whole entire property for anything illegal going on." When the officers arrived at the property, appellant, who was living there with Sims's permission, expressly objected to a search without a warrant.

After the officers informed appellant that Sims had given them permission to search the property and over appellant's objection and request for a warrant, the officers secured the building, detained appellant and others who were in the building, and conducted a search of the property. During the search, the officers gathered evidence, including an assortment of chemical substances and paraphernalia used in manufacturing methamphetamine. Sims was not at the property at the time of the search.

At trial, appellant moved to suppress the evidence obtained during the search on grounds that it was the fruit of an illegal search. The trial court denied his motion. After pleading not guilty, a jury found appellant guilty and assessed punishment at thirty years' imprisonment for the possession of a controlled substance and five years' imprisonment for possession of a chemical with the intent to manufacture. This appeal ensued.

## II. Standard of Review

■ The appropriate standard for reviewing most trial court's rulings on a motion to suppress is a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts and reviewing de novo the court's application of the law. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App.2000); *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

## III. Analysis

By his first point of error, appellant complains that his Fourth Amendment rights were violated when police searched the building over his objection, irrespective of Sims's consent. We agree.

■ "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 356, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The three exceptions under which a warrantless search can be justified are (1) the plain view doctrine, (2) consent, and (3) exigent circumstances. *Stewart v. State*, 681 S.W.2d 774, 777 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 14.05 (Vernon 2005) (providing that an officer may not enter a residence to make an arrest without a warrant unless a person who resides there consents or exigent circumstances exist). In this case, we review only the consent

and exigent circumstance exceptions as the officers had no other basis for being in the building that could serve to support a "plain view" contention. *See Stewart*, 681 S.W.2d at 777.

## A. Valid Consent

■ "To the Fourth Amendment rule ordinarily prohibiting the warrantless entry of a person's house as unreasonable *per se*, one 'jealously and carefully drawn' exception recognizes the validity of searches with the voluntary consent of an individual possessing authority." *See Randolph*, 126 S.Ct. at 1520. The exception for consent extends even to entries made with the permission of one whom the police reasonably, but mistakenly, believe to possess such authority. *Illinois v. Rodriguez*, 497 U.S. 177, 186, 188–89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

■ Based on the testimony elicited at trial, the trial court concluded that Sims had authority to consent to the search. However, after the trial in this case, the United States Supreme Court held, in *Randolph*, that while the consent of one with authority can support a warrantless entry, "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him," even in the face of another with equal authority. *Randolph*, 126 S.Ct. at 1518, 1520, 1522–24, 1528.

> Since the decision in *Katz v. United States*, 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576] (1967), it has been the law that "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 [99 S.Ct. 421, 58 L.Ed.2d 387] (1978). A subjective expectation of privacy is legitimate if it is " 'one that

society is prepared to recognize as "reasonable," ' " *id.* at 143–44, n. 12 [99 S.Ct. 421], quoting *Katz, supra*, at 361 [88 S.Ct. 507] (Harlan, J., concurring).

*Minnesota v. Olson*, 495 U.S. 91, 95–96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (omission in original). In *Randolph*, the Supreme Court noted the following:

> A tenant in the ordinary course does not take rented premises subject to any formal or informal agreement that the landlord may let visitors into the dwelling, and a hotel guest customarily has no reason to expect the manager to allow anyone but his own employees into his room.

*Randolph*, 126 S.Ct. at 1522 (citations omitted). In *Olson*, the Supreme Court similarly observed the following concerning overnight guests:

> That the guest has a host who has ultimate control of the house is not inconsistent with the guest having a legitimate expectation of privacy. The houseguest is there with the permission of his host, who is willing to share his house and his privacy with his guest. It is unlikely that the guest will be confined to a restricted area of the house; and when the host is away or asleep, the guest will have a measure of control over the premises. The host may admit or exclude from the house as he prefers, but it is unlikely that he will admit someone who wants to see or meet with the guest over the objection of the guest.... The point is that hosts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household....

*Olson,* 495 U.S. at 99, 110 S.Ct. 1684 (*cited with approval in Randolph,* 126 S.Ct. at 1522).

The evidence at trial showed that the officers knew appellant was at least a guest with permission to inhabit the building on an ongoing basis. Sims testified that he respected appellant's privacy and treated the living quarters as though it were appellant's apartment. Appellant almost always kept the doors locked, and Sims would infrequently enter or spend time in the living quarters in appellant's absence. When appellant was present, Sims would not enter without knocking on the door. Additionally, while the trial court found that appellant was a guest, not a tenant, the court also concluded that appellant and Sims had "equal access" and shared a degree of "mutual control" over the premises. Based on the above, appellant, even as an extended overnight guest, had an expectation of privacy. *See id.* at 94–100.

Pursuant to *Randolph,* we conclude that the consent exception to the Fourth amendment's warrant requirement is inapplicable to the evidence seized and introduced against him at trial. After securing the residence and detaining appellant, the officers should have abided by appellant's request that they obtain a search warrant because Sims's third-party consent was invalid in light of appellant's objection. *See Randolph,* 126 S.Ct. at 1522. Appellant's Fourth Amendment rights were, thus, violated when appellant unequivocally objected to the search of his property even though a third party, who was not present at the time, may have consented. *See id.*

### B. Exigent Circumstances

▮ We look next to the exigent circumstances exception under which a warrantless search can be justified. *See Stewart,* 681 S.W.2d at 777. "Situations creating exigent circumstances usually include factors pointing to some danger to the officer or victims, an increased likelihood of apprehending a suspect, or the possible destruction of evidence." *McNairy v. State,* 835 S.W.2d 101, 107 (Tex.Crim.App.1991) (en banc). The burden is on the State to prove exigency. *McGee v. State,* 105 S.W.3d 609, 615 (Tex. Crim.App.2003).

Lieutenant Phillip Cash with the Montgomery County Sheriff's Department testified that when he arrived he was concerned about the threat that the volatile substances posed to the safety of the community and to the safety of the officers on the scene. He was also concerned with the prospect that someone may have been inside destroying evidence. These concerns served as the basis for the initial protective sweep. *See Reasor v. State,* 12 S.W.3d 813, 815 (Tex.Crim.App.2000) (citing *Maryland v. Buie,* 494 U.S. 325, 328, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)) (explaining that protective sweeps may be conducted to protect the safety of officers and justify a warrantless entry).

As for the second entry into the building, during which the search was conducted and evidence seized, the record does not contain evidence of exigent circumstances. Following the protective sweep, Lieutenant Cash called Sims to confirm his consent before re-entering the building. Lieutenant Cash testified that had he not received Sims's consent to the search, he would have withdrawn following the initial sweep to obtain a warrant. Nothing hazardous was observed during the protective sweep. The officers had secured the premises and the three individuals who were present in the building, including appellant, were waiting outside. The record does not reflect that any contraband was observed during that sweep. We conclude

that no exigent circumstances existed in this instance.

Accordingly, reviewing de novo the trial court's application of the law, we conclude that the warrantless entry was unreasonable under the Fourth Amendment, and the trial court erred when it denied appellant's motion to suppress.

## IV. Harm Analysis

█ Having concluded error, we must conduct a harm analysis. *See* TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex.Crim.App.2001). The harm analysis for erroneous admission of evidence obtained in violation of the Fourth Amendment is the constitutional standard set forth in rule 44.2(a) which mandates that the judgment be reversed unless this Court determines "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX.R.APP. P. 44.2(a); *Hernandez*, 60 S.W.3d at 108. In this case, because all of the incriminating evidence was obtained during the warrantless search, its erroneous admission formed the basis of appellant's conviction. We cannot conclude that the error did not contribute to the conviction or punishment; thus, appellant was harmed by its admission, and the judgment of the trial court should be reversed. *See* TEX.R.APP. P. 44.2(a). We sustain appellant's first point of error.

Because this point of error is dispositive of the appeal, we need not address appellant's remaining points. *See id.* at rule 47.1.

## V. Conclusion

Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.