

# NUMBER 13-24-00168-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RICHARD FORD,                                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                           Appellee.

## ON APPEAL FROM THE 206TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Chief Justice Tijerina and Justices Peña and West
### Memorandum Opinion by Justice West

Appellant Richard Ford challenges his conviction for the capital murder. *See* TEX. PENAL CODE § 19.03(a)(2). After the jury returned a guilty verdict, the trial court sentenced appellant to life imprisonment without the possibility of parole. Appellant argues by two issues that the trial court erred in (1) denying his motions to suppress, and (2) denying his request for an instruction on the lesser-included offense of kidnapping. We affirm.

# I. BACKGROUND

On August 6, 2020, officers with the McAllen Police Department were alerted that Melissa Banda, appellant's ex-wife, was missing. Officers received surveillance video from Banda's residence showing Banda pull into the driveway, and appellant arriving shortly thereafter, exiting a white Dodge Journey, and forcefully hauling Banda into the vehicle before driving away. Officers were also aware that appellant had harassed or threatened Banda in the past and recently violated Banda's protective order against him.

John Adame, the lead detective on the case, testified that, after interviewing relevant witnesses of Banda's whereabouts that day, he used the City of McAllen's "Milestone" video surveillance system to identify the license plate of the appellant's vehicle. Investigator Adame explained that Milestone is owned and operated by the City of McAllen and compiles traffic camera footage from major intersections and roads. He testified that Milestone is typically used in investigations to view traffic accidents or to identify a vehicle's make, model, or license plate number. Once appellant's vehicle was identified, officers used Milestone footage to track the vehicle's route in the city, which revealed appellant had been following Banda's vehicle throughout the day.

A search of the Dodge Journey's license plate number revealed the vehicle was a rental car from Avis Car Rental. Officers reported to the Avis location and requested the identity of the individual to whom the vehicle was rented as well as the vehicle's location. An Avis representative confirmed appellant as the individual renting the vehicle and provided the current GPS location of the vehicle which was "at the dead end of Highway 100 on South Padre Island." Officers made contact with appellant at that location. Appellant initially gave officers a fake name. After appellant was arrested, officers

2

observed blood stains on the outside of the vehicle that were later determined to contain Banda's DNA. Appellant also appeared to have injuries consistent with fingernail scratches on his wrist.

Around the same time appellant was arrested, officers located a silver Ford F-150 truck registered under appellant's name in a parking lot near the car rental location. Officers seized the truck and towed it to the McAllen Police Department to secure it pending issuance of a search warrant. Officers obtained the search warrant the next day and found a BB gun, air pellets, and a duffel bag, the contents of which were not disclosed to the jury.

Investigator Adame testified that the day after appellant's arrest, he obtained a warrant for Avis's "historical location data" of the rental vehicle. The GPS or location data indicated that the vehicle had stopped at a rural location near La Blanca, Texas, for about fifteen minutes and then traveled to a Walmart. Other evidence introduced at trial showed that appellant purchased a change of clothes at that Walmart location.

Banda's body was later discovered at the same rural location near La Blanca. Medical expert testimony revealed her death was caused by a long, deep cutting wound to the neck. The State presented evidence that in the days prior to Banda's abduction and murder, appellant purchased supplies such as a hunting knife, box cutters, cable or zip ties, and duct tape.

The jury convicted appellant as outlined above.[1] This appeal followed.

---

[1] Appellant was charged with a four-count indictment: (1) capital murder, (2) assault of family member by impeding breath or circulation, (3) violation of a protective order, and (4) stalking. Appellant filed a motion to sever the four counts against him prior to trial, and the State proceeded on the first count of capital murder. After the jury returned a guilty verdict, the State dismissed the remaining counts.

## A. Motions for Mistrial

Prior to trial, appellant filed motions to suppress (1) the location data from the City of McAllen Milestone surveillance system, (2) the GPS location of the rental vehicle that law enforcement obtained from Avis the day of his arrest, and (3) the evidence obtained from the search and seizure of appellant's personal vehicle, the silver Ford F-150 truck. The trial court denied the motions.

The trial court issued findings of fact and conclusions of law. The trial court concluded that the use of Milestone and the GPS data from Avis by the McAllen Police Department did not constitute an illegal search in violation of United States or Texas Constitutions. Relevant here, it found that (1) "the Milestone Camera System is city operated camera system operated to enforce traffic regulations on public roadways," (2) "a vehicle's license plate is exposed to public view," (3) "a public roadway is not typically an area where a person has a reasonable expectation of privacy," and (4) "taking a picture of a license plate displayed on a vehicle that is traveling on a public road is not subject to Fourth Amendment protection and does not constitute a search." As to the GPS data from Avis, the trial court found that Investigator Adame made the request for appellant's location under exigent circumstances.

As to the Ford F-150, the trial court found that the truck "was seized and towed to the McAllen Police Department without a warrant due to . . . probable cause to believe the vehicle obtained evidence related to the kidnapping of [Banda]." It also found that the couple's divorce decree awarded the truck to Banda. It then concluded that there was probable cause to seize the truck, the seizure of the truck "was justified under the

4

automobile exception," and alternatively, appellant had no standing to challenge the seizure of the truck because "Banda was the rightful owner."

## II.    MOTIONS TO SUPPRESS

By his first issue, appellant argues that the trial court erred when it denied his motions to suppress.

## A.    Standard of Review & Applicable Law

"We review a trial court's ruling on a motion to suppress under a bifurcated standard." *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020). "We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record." *Id.* We review de novo the trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *Id.* At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). "We will sustain the trial court's application of the law if it is correct on any applicable theory of law, and the record reasonably supports the ruling." *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019).

## B.    Analysis

### i.    Milestone System Location Data

Appellant contends that "the warrantless dragnet search of the city-wide [Milestone] system was unconstitutional," and "[t]he law forbids the use of technology to

track a person's movement without a warrant." Specifically, he argues that "[t]he act of law enforcement using the city-wide [Milestone] system constitutes a 'search.'"

A defendant has "standing" to contest a search when the defendant has a legitimate expectation of privacy in the space being invaded by the government. *See Katz v. United States*, 389 U.S. 347, 350–51 (1967); *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014). A defendant has the burden to prove that a legitimate expectation of privacy existed and must do so by demonstrating that "(1) he has a subjective expectation of privacy in the place or object searched, and (2) society is prepared to recognize that expectation as 'reasonable' or 'legitimate.'" *Granville*, 423 S.W.3d at 418 (first citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979); and then citing *Kothe v. State*, 152 S.W.3d at 59 (Tex. Crim. App. 2004)).

Appellant primarily relies on *Carpenter v. United States*, 585 U.S. 296 (2018), for authority that he had a legitimate expectation of privacy in the record of his physical movements. That case involved "the Government's acquisition of wireless carrier cell-site records," otherwise known as cell-site location information (CSLI), which "reveal[ed] the location of Carpenter's cell phone whenever it made or received calls." *Id.* at 301–02, 306. The United States Supreme Court held that an individual maintains a reasonable expectation of privacy in the record of his physical movements as captured through CSLI and that officers are generally required to obtain a warrant before acquiring such data. *Id.* at 311–16. ("Having found that the acquisition of Carpenter's CSLI was a search, we also conclude that the Government must generally obtain a warrant supported by probable cause before acquiring such records.").

6

We find *Carpenter* distinguishable from the facts of this case. *Carpenter* involved third-party data of an individual's personal location which was being tracked at all times. *Id.* at 306, 311 ("Mapping a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts. As with GPS information, the time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." (internal quotations omitted)). *Carpenter* also emphasized that "historical cell-site records present even greater privacy concerns than the GPS monitoring of a vehicle" the Court considered in other cases. *Id.* at 311.

In contrast, this case involves a city-owned system of video cameras in high-traffic, public areas which was used by officers to identify a vehicle's license plate number and various locations throughout the city in a single day. *See id.* at 311–12; *Sims v. State*, 569 S.W.3d 634, 645–46 (Tex. Crim. App. 2019) (applying the holding from *Carpenter* and concluding that appellant did not have a reasonable expectation of privacy in his physical movements or location as reflected in less than three hours of real-time CSLI records the police accessed by pinging appellant's phone fewer than five times). And as appellant notes in his appellate brief, he "does not argue that he has an expectation of privacy in his license plate number," and there is "a diminished privacy interest when using public roads." *See Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.").

We hold that appellant did not have a legitimate expectation of privacy in the location of the Avis rental vehicle because the license plate and vehicle were in public view, the Milestone system did not track his personal location continuously, and officers

7

used Milestone to document the rental vehicle's presence at specific locations throughout McAllen for a single day. *See Carpenter*, 585 U.S. at 311; *Katz*, 389 U.S. at 351; *Sims*, 569 S.W.3d at 645–46; *Granville*, 423 S.W.3d at 407–08; *see also Uhunmwangho v. State*, No. 09-19-00119-CR, 2020 WL 1442640, at *6 (Tex. App.—Beaumont Mar. 25, 2020, no pet.) (mem. op., not designated for publication) (holding that "taking a picture of a license plate displayed on a vehicle that is traveling on a public road would not be subject to Fourth Amendment protection nor would it constitute a search"); *United States v. Yang*, No. 2:16-CR-231-RFB, 2018 WL 576827, at *6 (D. Nev. Jan. 25, 2018), *aff'd*, 958 F.3d 851 (9th Cir. 2020) ("Yang does not have a reasonable expectation of privacy in the observation (and location of the observation) of the license plate of the vehicle he is driving on public streets with other vehicles.").

Moreover, even if appellant had a reasonable expectation of privacy in the license plate number or public location of the rental vehicle, *Carpenter* explicitly held that "case-specific exceptions may support a warrantless search" such as when exigent circumstances are present:

> [E]ven though the Government will generally need a warrant to access CSLI, case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances. "One well-recognized exception applies when '"the exigencies of the situation" make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.'" *Kentucky v. King*, 563 U.S. 452, 460, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978)). Such exigencies include the need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm, or prevent the imminent destruction of evidence. 563 U.S., at 460, and n.3, 131 S. Ct. 1849.
>
> As a result, if law enforcement is confronted with an urgent situation, such fact-specific threats will likely justify the warrantless collection of CSLI. Lower courts, for instance, have approved warrantless searches related to

bomb threats, active shootings, and child abductions. Our decision today does not call into doubt warrantless access to CSLI in such circumstances. While police must get a warrant when collecting CSLI to assist in the mine-run criminal investigation, the rule we set forth does not limit their ability to respond to an ongoing emergency.

585 U.S. at 319–20.

"The exigency exception operates 'when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.'" *State v. Ruiz*, 622 S.W.3d 549, 554 (Tex. App.—Corpus Christi–Edinburg 2021, no pet.) (quoting *Weems v. State*, 493 S.W.3d 574, 578 (Tex. Crim. App. 2016)). "Whether law enforcement faced an emergency that justifies acting without a warrant calls for a case-by-case determination based on the totality of the circumstances." *Id.*; *see also State v. Martinez*, No. 13-14-00117-CR, 2015 WL 1957087, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 30, 2015, no pet.) (mem. op., not designated for publication) ("Courts determine whether an exigency existed based on the totality of the circumstances.").

Here, officers saw a video of appellant forcefully taking Banda and placing her in a vehicle. Officers were also aware that appellant had harassed or threatened Banda in the past and had recently violated her protective order against him. From these facts, the trial court did not abuse its discretion when it found that exigent circumstances existed and officers did not violate appellant's Fourth Amendment rights when they utilized the Milestone system to identify the license plate number and locations of the rental vehicle. *See Carpenter*, 585 U.S. at 319–20; *Odom v. State*, 200 S.W.3d 333, 337 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.) ("Situations creating exigent circumstances usually include factors pointing to some danger to the officer or victims, an increased

9

likelihood of apprehending a suspect, or the possible destruction of evidence."); *Lloyd v. State*, 453 S.W.3d 544, 548 (Tex. App.—Dallas 2014, pet. ref'd) (providing that exigent circumstances are situations that "make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment," including "threat to human life, rendering emergency assistance to injured occupants, or hot pursuit of a fleeing suspect"). We overrule this sub-issue.

### ii.    GPS data from Avis Car Rentals

Appellant next challenges the GPS location data of his rental vehicle that Avis provided to officers.[2] We note that law enforcement received a warrant for the "historical location data" of the rental vehicle, which officers used later to backtrack the vehicle's movement throughout the day, and appellant does not challenge the admission of that evidence on appeal. Instead, he challenges the rental vehicle's real-time location that Avis provided officers at the time of the search, which led them to appellant's location.

Appellant contends that the trial court erred when it found that exigent circumstances existed because "approximately five (5) hours elapsed between [when] Officer Adame's belief arose and his search for GPS information," "[n]o portion of the record indicates why a warrant could not be obtained during those five (5) hours," and "more than sufficient information to obtain a warrant." Appellant cites to no authority for this argument. Regardless, we concluded above that based on the totality of the circumstances, the exigent circumstances exception applied to the officers' use of the

---

[2] Avis owned appellant's rental vehicle and monitored and collected the vehicle's GPS data for business purposes. We will assume without deciding that appellant had a legitimate expectation of privacy in the location of the rental vehicle and had standing to challenge the "search" of the rental vehicle's location. *See, e.g.*, *LopezGamez v. State*, 622 S.W.3d 445, 455 (Tex. App.—Fort Worth 2020, pet. ref'd) (holding that because "[a]ppellant and his wife agreed, as a condition of their purchase, to allow [the car dealership] to access the F-150's whereabouts through a real-time GPS tracking device," they "relinquished their expectation of privacy in that information").

Milestone surveillance system. Because the same facts apply to the GPS location of the rental vehicle, we likewise hold that the exigent circumstances exception applied to the GPS data retrieved from Avis. *See Carpenter*, 585 U.S. at 319–20; *Odom*, 200 S.W.3d at 337; *Lloyd*, 453 S.W.3d at 548. We overrule appellant's second sub-issue.

### iii.      Seizure of Pickup Truck

Appellant challenges the seizure of the silver Ford F-150 truck and contends that the seizure violated the Fourth Amendment. He contends that therefore, the resulting search of the truck was unlawful.

We first note that the trial court found appellant did not have standing to challenge the seizure of the truck because the couple's divorce decree awarded the truck to Banda. Appellant does not challenge this finding on appeal. Based on the evidence and findings of the trial court, we cannot find that the trial court abused its discretion when it denied the motion to suppress. *See Ruiz*, 581 S.W.3d at 785 ("We will sustain the trial court's application of the law if it is correct on any applicable theory of law, and the record reasonably supports the ruling."); *Hughes v. State*, 897 S.W.2d 285, 305 (Tex. Crim. App. 1994, *cert. denied*) ("A defendant lacks standing to contest the search of a stolen vehicle.").[3]

Moreover, appellant fails to show how the seizure of the vehicle was harmful. *See* TEX. R. APP. P. 44.2(a) (providing that, upon finding constitutional error, we must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment), 44.2(b) (providing that all nonconstitutional errors that do "not

---

[3] Appellant does not argue, for example, that he had permission to drive the truck. *See Matthews v. State*, 165 S.W.3d 104, 112 (Tex. App.—Fort Worth 2005, no pet.) ("A defendant also has standing to challenge the search of a car he does not own if he shows that he gained possession of the car from the owner with the owner's consent or from someone authorized to give permission to drive it.").

11

affect substantial rights must be disregarded"). The search of the truck revealed a BB gun, air pellets, and a duffel bag, the contents of which were not disclosed to the jury. Even if the trial court erred in denying the motion to suppress, the State presented compelling evidence that appellant murdered Banda, including video evidence of him forcing her into a vehicle, DNA results showing Banda's blood was on that vehicle, GPS data indicating that appellant was at the scene where Banda's body was found, and evidence that appellant purchased a knife, zip ties, and duct tape prior to the murder. We conclude beyond a reasonable doubt that any error in admitting the evidence from the seizure of the truck did not contribute to the judgment or punishment and did not affect appellant's substantial rights. *See id.* R. 44.2(a), (b). We overrule this sub-issue. Appellant's first issue is overruled.

### III.    LESSER-INCLUDED OFFENSE

By his second issue, appellant argues that the trial court erred when it denied his request for an instruction on the lesser-included offense of kidnapping. Appellant contends that "there was no direct evidence of [a]ppellant committing murder, unlike direct evidence of [a]ppellant committing a kidnapping."

A defendant is entitled to submission of a lesser-included offense only if: "(1) the requested lesser offense is in fact a lesser-included offense of the charged offense, and (2) there is some evidence in the record that would permit the a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023). "In other words, the evidence must establish that the lesser-included offense provides the jury with a 'valid, rational alternative to the

12

charged offense.'" *Wade v. State*, 663 S.W.3d 175, 181 (Tex. Crim. App. 2022) (citing *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007)).

Appellant was convicted of capital murder where "the person intentionally commits the murder in the course of committing or attempting to commit kidnapping." *See* TEX. PENAL CODE § 19.03(a)(2). The State concedes that kidnapping is a lesser-included offense. *See id.* §§ 19.03(a)(2), 20.03; TEX. CODE CRIM. PROC. art. 37.09(1). However, the State argues that even if the jury was instructed on the offense of kidnapping, the jury would still have convicted appellant of capital murder. We agree. The State presented overwhelming circumstantial evidence that appellant murdered Banda. Despite appellant's contention that there was no "direct" evidence of the murder, "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Even if appellant was entitled to an instruction on the offense of kidnapping, appellant failed to establish that the jury would have rationally only convicted him of kidnapping. *See Ransier*, 670 S.W.3d at 650. We overrule appellant's second issue.

## IV. CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
29th day of January, 2026.

13